**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Jeffery Caron and Spellbinders Paper Arts Company, LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>QuicKutz Inc., a Utah corporation,<br><br>Defendant. | No. CV 09-02600-PHX-NVW<br><br>**ORDER** |

Before the Court are the parties' respective claim construction briefs and responses to each other's briefs, as well as the parties' joint claim construction chart (Docs. 149-1, 158, 159, 165, 166). Having reviewed these materials and the patent at issue, U.S. Patent No. 7,469,634, the Court issues the following claim construction order.

**I.     BACKGROUND**

   **A.     The Patent Generally**

The patent in question involves an apparatus, system, and method of embellishing sheet media (*e.g.*, paper, card stock, etc.). This invention generally targets the scrapbooking industry. Figure 1 from the patent gives a general idea of the invention it claims:

FIG. 1

1  This figure depicts what the patent variously describes as a "die" or an "embellishing template." When pressed against sheet media, it can simultaneously emboss that media by forcing it through the hole in the middle (item 24) and "engrave" or even cut the media with the ridge surrounding the hole (items 30 and 32). Figure 2 depicts this result in cross-section:



FIG. 2

Here, item 10a represents the die and the object above it represents a piece of paper that has been pressed into the die, forming an embossed impression (item 60) and simultaneously cutting that impression and some of the paper around it away from the rest of the paper (item 40).

Although figures 1 and 2 depict a simple circle shape, the patent contemplates much more elaborate designs such as words and complex shapes.

### B. The Claims at Issue

The parties have identified the following claims for potential construction:

> 18. A one-piece dry embossing die for embossing and die cutting sheet media in a press comprising: a one-piece body having a media abutment surface and an oppositely disposed press force receiving second surface and an unobstructed media embossing aperture in the media abutment surface having an aperture wall extending through the one-piece body from the media abutment surface to the second surface; and a die blade extending from the media abutment surface and terminating in a cutting surface.

> 19. The die defined in claim 18 wherein the die blade circumscribes the aperture.

\* \* \*

> 21. The die defined in claim 18 wherein the body is formed of an etched material.

22. The die defined in claim 21 wherein the body is formed of metal.

23. The die defined in claim 18 wherein the aperture is an etched aperture.

* * *

28. A method of embellishing media with a press having a press member for generating a press force, the method comprising: placing sheet media against a one-piece embellishing template having a media abutment surface, the media abutment surface having an embellishing wall extending therefrom and terminating in an embellishing surface and an aperture formed in the media abutment surface having an aperture wall extending through the one-piece embellishing template; pressing the media against the embellishing template media abutment surface; pressing the media into the aperture forming a protruding embellishment in the media; and pressing the media against the embellishing surface forming a second embellishment in the media.

29. The method defined in claim 28 further comprising applying material to the media through the aperture using the aperture wall as a stencil.

30. The method defined in claim 28 wherein the embellishing surface is a blade edge and the step of pressing the media against the embellishing surface further comprises die cutting the media.

31. The method defined in claim 28 wherein the step of pressing the media against the embellishing surface further comprises pressing with a relatively lower force and forming a second protruding embellishment in the media with the embellishing surface.

* * *

33. The method defined in claim 28 wherein the step of pressing the media against the embellishing surface further comprises pressing with a relatively higher force and die cutting the media.

\* \* \*

> 35. The method defined in claim 28 wherein the pressing the media against the embellishing template media abutment surface, pressing the media into the aperture forming a protruding embellishment in the media, and pressing the media against the embellishing surface occur in the same press operation.

## II. LEGAL STANDARD

Claim construction is the process of "determining the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Claim construction presumes that the scope of the claim cannot be adequately understood without some elaboration or rephrasing. In this process, "the [patent's] specification is always highly relevant . . . . Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted).

## III. ANALYSIS

### A. Invalidity Arguments

As to certain claims, QuicKutz makes several arguments for invalidity based on indefiniteness. These arguments are premature and will therefore not be addressed in this order. The Court must first construe the claims before indefiniteness can be determined. Nonetheless, the Court has no duty to construe a claim so as to sustain its validity. "[I]f the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then . . . the claim is simply invalid." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999).

### B. Constructions to Which the Parties Stipulate

#### 1. "dry" (claim 18)

Pursuant to the parties' stipulation, "dry" shall be construed as <u>"used without applying heat."</u>

**2.     "embossing" (claim 18)**

Pursuant to the parties' stipulation, "embossing" shall be construed as "forming a three-dimensional impression in sheet media."

**3.     "embellishing"/"embellishment" (claims 28, 30, 31, 33, 35)**

Pursuant to the parties' stipulation, "embellishing" shall be construed as "altering the appearance of sheet media by cutting, embossing, or stenciling," and "embellishment" shall be construed as "an alteration to the appearance of sheet media in the form of a cut, embossment, or stencil."

**4.     "embellishing surface" (claims 28, 30, 31, 33, 35)**

Pursuant to the parties' stipulation, "embellishing surface" shall be construed as "the termination or extreme edge of the embellishing wall."

**C.     Constructions the Parties Contest**

**1.     "one-piece" (claims 18, 28)**

Spellbinders proposes to construe "one-piece" simply as "unitary." QuicKutz proposes "operable without a complementary piece (*i.e.*, the die is not part of a male/female pair)." In support, both cite the same portion of the specification, which reads as follows: "The one-piece template 10a includes a single die piece, unlike conventional two-piece dies having a matching male piece and female piece . . . ." Col. 3:7–9. The reference to "10a" in this passage correlates with Figure 1, reprinted above.

QuicKutz's construction is rooted in the cited portion of the specification, whereas Spellbinders' proposed "unitary" is more vague than "one-piece" unconstrued. Spellbinders nonetheless draws "unitary" from a different portion of the specification. By way of background on Spellbinders' argument, it is helpful to note (with reference to Figure 1) that item 14 refers to the "body" of the template, which "is generally hard and can be formed of metal, including but not limited to steel . . . or other materials hard enough to [repeatedly perform the template's function]." Col. 3:10–16. The specification later states, "The template body 14 is preferably a unitary or one-piece unit formed of the template material described above. However . . . the template 10*b* can

- 5 -

include an optional backing 46 disposed on the second side 18 of the body 14." Col. 4:56–60. Spellbinders draws its proposed "unitary" construction from this passage.

This use of "unitary" in the specification implies nothing more than that "unitary" is synonymous with "one-piece," which is not helpful for current purposes. Spellbinders, however, draws from "unitary" what it calls "a slightly different, broader meaning" than "operable without a complementary piece," namely that it excludes "(1) a group of multiple dies having the same shape and (2) a manufacturing sheet comprised of multiple die pieces." (Doc. 159 at 8.) In other words, Spellbinders argues that "unitary" means both "operable without a complementary piece" and something to the effect of "existing in isolation from other like templates."

Spellbinders cites no support for its second meaning, which is certainly not an obvious interpretation of the cited language in the specification. If anything, that language suggests that "unitary" and "one-piece" mean "functional without the optional backing" — but this is tautological given that the backing is expressly optional. The specification suggests nothing about ensuring that the template is not part of "a group of multiple dies having the same shape" or "a manufacturing sheet comprised of multiple die pieces." Indeed, the provenance of Spellbinders' proposed construction is baffling.

In response, QuicKutz suggests that Spellbinders is attempting to selectively exclude potentially invalidating prior art. QuicKutz's response brief includes a photograph of what appears to be both a group of multiple dies having the same shape and a manufacturing sheet comprised of multiple die pieces. QuicKutz says this photograph represents "an exemplary sheet of dies sold by Mr. Dywan [one of the patent's named inventors] to QuicKutz long prior to the earliest claimed priority date of the '634 Patent." (Doc. 165 at 4.)

It need not be decided here whether QuicKutz has correctly divined Spellbinders' motivations for offering its "unitary" construction. It suffices to say that the specification — "the single best guide to the meaning of a disputed term," *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted) — contains no support for Spellbinders' proposed

1 construction. QuicKutz's proposal, by contrast, comports with the meaning disclosed in
2 the specification. "One-piece" will therefore be construed as <u>"operable without a
3 complementary piece (*i.e.*, the die is not part of a male/female pair)."</u>

### 2. "media embossing aperture" (claim 18)

Spellbinders proposes to construe "media embossing aperture" as "an opening passing completely through the body of the die or template and having a periphery of a predetermined shape to form an embossed impression corresponding to that predetermined shape on sheet media." In support, Spellbinders cites the following passage from the specification: "The one or more apertures 24 can have similar shapes, or different shapes, which define an embossing pattern for forming an embossed impression, also referred to as an embellishment, in the media 12 during pressing as shall be described in further detail below." Col. 3:38–43.

QuicKutz by contrast proposes "a through hole or window extending through the template body capable of forming an embossed impression onسsheet media." QuicKutz cites the following from the specification: "The first surface 20 includes one or more apertures 24, which can also be referred to a [*sic*; 'as'] through holes or windows extending through the template body 14." Col. 3:28–31.

In this instance, neither party's proposal is adequate. A "media embossing aperture" is an aperture that can emboss media. If claim construction is required, it is only for two reasons. First, *media* and *aperture* are used in a manner that, although definitionally correct, are unfamiliar to the average speaker; and second, *media* here actually refers to something narrower than all forms of media.

As for *aperture*, it simply means "opening" (from the Latin *aperire*, "to open"). *Media*, in a general sense, is just the plural of *medium*, which can refer to any means of transmitting information. In the context of this patent, however, *media* means what the parties have elsewhere described as "sheet media," *i.e.*, paper and similarly thin materials capable of holding an embossed impression. Col. 2:67–3:3 ("The media can be sheet material suitable for embellishing including, but not limited to, paper, card stock,

1  cardboard, metal, such as for example metal foil or other thin metals, and plastic, among
2  others."). Thus, at minimum, "media embossing aperture" can be construed as an
3  opening in the die capable of embossing sheet media.

4  Both parties' proposed constructions add that the opening extends completely
5  through the die. This is self-evident. If it did not extend completely through the die, it
6  would not be an "opening." It would be a dent or impression, but not an opening.
7  Accordingly, there is no need to specify that the opening extends completely through the
8  die.

9  Spellbinders proposes adding that the opening has "a periphery of a predetermined
10 shape to form an embossed impression corresponding to that predetermined shape."
11 Spellbinders' intends its proposal to clarify that the opening "is more than any hole in the
12 die body that might be capable of forming a random or inadvertent embossment." (Doc.
13 166 at 6.) QuicKutz counters that the specification contains no literal support for such a
14 narrowing clause. However, the entire thrust of the patent is that these openings have
15 intentionally defined shapes, and that an end-user would purchase a die because the user
16 can emboss the die's intentionally defined pattern into paper or similar materials. Thus,
17 Spellbinders' proposal is unobjectionable for lack of "literal support" in the specification.

18 Nonetheless, Spellbinders' proposed language does not actually express the
19 meaning it hopes to convey. Specifically, "predetermined shape" does not exclude "any
20 hole in the die body that might be capable of forming a random or inadvertent
21 embossment." For example, one might conceivably add a small circular opening in the
22 corner of a die so that a set of dies could be kept together on a ring, like keys on a
23 keychain. Such a hole has a "predetermined shape," even though no one intends it to be
24 used for embossing.

25 Considering all the foregoing, "media embossing aperture" will be construed as
26 "an opening in the die capable of, and intended to be used for, embossing sheet media."
27 For clarity, "intended to be used for" refers both to the intent to use the opening to
28

emboss a pattern corresponding to the shape of the opening, and the intent to emboss sheet media.

### 3. "embellishing template" (claims 28, 35)

Spellbinders proposes "a die having features used for cutting, embossing, and/or stenciling predetermined patterns on sheet media." Spellbinders cites the following from the specification as support: "Referring to FIGS. 1-3, a one-piece media embellishing template, or die is shown generally at 10a for embellishing media 12, which in the illustrated embodiment isسhet media." Col. 3:4–6.

QuicKutz proposes "an intermediate product resulting from chemically etching a template blank to form one or more dies, and which includes features used for cutting, embossing, and/or stenciling sheet media." The basis of QuicKutz's proposal is unclear. QuicKutz cites portions of the specification distinguishing a "template" from a "template blank" (*i.e.*, an unadorned piece of metal that is eventually etched or otherwise transformed so that it becomes an "embellishing template," complete with the "aperture," "embellishing wall," and so forth). But that distinction does not seem to be at issue here. Moreover, the patent does not require a template formed through chemical etching. Rather, chemical etching is part of a dependent claim (claim 21). Thus, QuicKutz's proposal is inappropriate.

The specification makes "embellishing template" synonymous with "die," which is an appropriate term in this context. Moreover, both sides agree that the claim should be construed to specify that the die contains "features used for cutting, embossing, and/or stenciling . . . sheet media." The only remaining argument is Spellbinders' addition of "predetermined patterns on" where the ellipses appears in the previous quote. This reprises the parties' previous arguments about intentionality. Again, "predetermined" does not adequately exclude other intentional features that might also cut, emboss, or stencil, even though not intended for that purpose. Taking that concern into account however, "embellishing template" shall be construed as <u>"a die having features intended to be used for cutting, embossing, and/or stenciling on sheet media."</u>

#### 4. "embellishing wall" (claim 28)

Spellbinders proposes "a solid projection from the body of the die or template extending along the body in a predetermined pattern to form an embossed impression and/or cut corresponding to that predetermined pattern on sheet media." QuicKutz proposes "a raised surface extending above the body of the die or template that is distinct from the aperture wall and is capable of forming an embossed impression and/or cutting sheet media." The parties cite the same extended passages of the specification for their respective proposals, but reprinting those passages is unnecessary here. The real dispute over this construction again turns on Spellbinders' "predetermined" language. That issue will be resolved as it has been above, by rephrasing the construction to accurately express Spellbinders' meaning. QuicKutz's addition of "distinct from the aperture wall" will be accepted given that Spellbinders does not object to defining "aperture wall" as "distinct from the embellishing wall" (see Part D.3, below). "Embellishing wall" will therefore be defined as <u>"a solid projection from the body of the die or template intended to be used to form an embossed impression in sheet media, or to cut sheet media, or both."</u>

### D. Constructions Offered by QuicKutz Only

QuicKutz offers several constructions that Spellbinders views as unnecessary, but to which Spellbinders does not object.

#### 1. "unobstructed" (claim 18)

QuicKutz proposes to construe "unobstructed" as "a characteristic describing an aperture that allows for stenciling of the sheet media through the aperture without any material to impede the stenciling of the sheet media through the aperture." However, "unobstructed" requires no such construction. It is not a term of art or otherwise in need of elaboration. Its plain, inherent meaning suffices.

#### 2. "die" (claims 18, 19, 21, 22, 23)

QuicKutz proposes "any of various tools or devices for imparting a desired shape, form, or finish to a material or for impressing an object or material." Given that "die" can mean something other than this definition (*e.g.*, the singular of *dice*), QuicKutz's

proposal will be accepted. "Die" will therefore be construed as "any of various tools or devices for imparting a desired shape, form, or finish to a material or for impressing an object or material."

### 3. "aperture wall" (claims 28, 29)

QuicKutz proposes "a structure distinct from the embellishing wall extending through the die or template body without extending above the media abutment surface." Given the specification's repeated distinction between the embossing aperture and the embellishing wall, this construction is accepted. "Aperture wall" will therefore be construed as "a structure distinct from the embellishing wall extending through the die or template body without extending above the media abutment surface."

### 4. "protruding embellishment" (claim 28)

QuicKutz proposes "a three dimensional impression extending from one side of the media." With the addition of a hyphen, and of "sheet" before media, this construction is accepted. "Protruding embellishment" will therefore be construed as "a three-dimensional impression extending from one side of the sheet media."

### 5. "stencil" (claim 29)

QuicKutz proposes "application of material to sheet media through the aperture." In light of how claim 29 uses "stencil," this construction is improper. Claim 29 reads, "The method defined in claim 28 further comprising applying material to the media through the aperture using the aperture wall as a stencil." "Stencil" is used here as an object, whereas QuicKutz's construction treats it as an action. Seen in the full context of the claim, it requires no construction.

### 6. "relatively lower force" (claim 31)

QuicKutz proposes "a force sufficient to cause a die to create a protrusion on sheet media but insufficient to cause the die to cut sheet media." This construction is helpful and will be adopted with a minor modification reflecting the fact that the force necessary to cause a protrusion without cutting is not constant between various types of sheet media. "Relatively lower force" will therefore be construed as "a force sufficient to

cause a die to create a protrusion on sheet media but insufficient to cause the die to cut that media."

### 7. "relatively higher force" (claim 33)

QuicKutz proposes "a force sufficient to cause a die to cut sheet media." This construction is helpful and will be adopted. "Relatively higher force" will therefore be construed as "a force sufficient to cause a die to cut sheet media."

IT IS THEREFORE ORDERED that, with reference to U.S. Patent No. 7,469,634:

- "aperture wall" (claims 28, 29) shall be construed as "a structure distinct from the embellishing wall extending through the die or template body without extending above the media abutment surface";
- "die" (claims 18, 19, 21, 22, 23) shall be construed as "any of various tools or devices for imparting a desired shape, form, or finish to a material or for impressing an object or material";
- "dry" (claim 18) shall be construed as "used without applying heat";
- "embellishing surface" (claims 28, 30, 31, 33, 35) shall be construed as "the termination or extreme edge of the embellishing wall";
- "embellishing template" (claims 28, 35) shall be construed as "a die having features intended to be used for cutting, embossing, and/or stenciling on sheet media";
- "embellishing wall" (claim 28) shall be construed as "a solid projection from the body of the die or template intended to be used to form an embossed impression in sheet media, or to cut sheet media, or both";
- "embellishing" (claims 28, 30, 31, 33, 35) shall be construed as "altering the appearance of sheet media by cutting, embossing, or stenciling";
- "embellishment" (claims 28, 30, 31, 33, 35) shall be construed as "an alteration to the appearance of sheet media in the form of a cut, embossment, or stencil";

- "embossing" (claim 18) shall be construed as "forming a three-dimensional impression in sheet media";
- "media embossing aperture" (claim 18) shall be construed as "an opening in the die capable of, and intended to be used for, embossing sheet media";
- "one-piece" (claims 18, 28) shall be construed as "operable without a complementary piece (i.e., the die is not part of a male/female pair)";
- "protruding embellishment" (claim 28) shall construed as "a three-dimensional impression extending from one side of the sheet media";
- "relatively higher force" (claim 33) shall be construed as "a force sufficient to cause a die to cut sheet media"; and
- "relatively lower force" (claim 31) shall be construed as "a force sufficient to cause a die to create a protrusion on sheet media but insufficient to cause the die to cut that media."

Dated this 20th day of August, 2012.

_____
Neil V. Wake
United States District Judge